## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

JACQUELINE CURRY,

               Plaintiff,

v.                                             Case No:  6:11-cv-963-Orl-36GJK

HSBC TECHNOLOGY & SERVICES,
LLC,

               Defendant.

_____/

## ORDER

This cause comes before the Court upon Defendant HSBC Technology & Services, LLC's ("Defendant") Motion for Summary Judgment ("Motion for Summary Judgment") (Doc. 64). Plaintiff Jacqueline Curry ("Plaintiff"), proceeding *pro se*, filed a Response in Opposition to Defendant's Motion for Summary Judgment ("Response") (Doc. 67),[1] to which Defendant replied ("Reply") (Doc. 71).[2] Upon consideration of the parties' submissions, including memoranda, affidavits, depositions and accompanying exhibits, and for the reasons that follow, the Court will grant Defendant's Motion for Summary Judgment.

### I.   BACKGROUND

        **A.  Statement of Facts** [3]

---

[1] Following the submission of her Response (Doc. 67), Plaintiff filed two Supplements responding to Defendant's Motion for Summary Judgment. *See* Docs. 70. 72.

[2] On August 22, 2012, Magistrate Judge Gregory J. Kelly permitted Plaintiff's counsel to withdraw as attorney, and Plaintiff continues to prosecute this action *pro se*. *See* Doc. 57.

[3] As the parties in this case submitted a limited Stipulation of Agreed Material Facts (Doc. 65), the Court cites Defendant's statement of undisputed facts (Doc. 64, pp. 3-6) where they do not conflict with the Amended Complaint (Doc. 9), and otherwise determines facts based upon the parties' submissions, declarations, and deposition testimony.

Plaintiff is an African-American woman, married to an allegedly disabled man.  Doc. 65, ¶ 1; Doc. 9, ¶ 4.  At the time of the filing of the Amended Complaint, Plaintiff resided in Longwood, Florida, although she has apparently relocated to Asheboro, North Carolina.  Doc. 9, ¶ 5; *see* Doc. 72.  Defendant is a multi-national banking and financial services organization. Doc. 64, p. 3.

Plaintiff began working for Defendant around October 6, 2003 as a Business Systems Analyst.  Doc. 9, ¶ 12.  Plaintiff's employment with Defendant concluded on June 2, 2008.[4]

**B. Procedural History**

Plaintiff's Amended Complaint, filed on October 4, 2011, asserts three causes of action against Defendant: (1) Count I – Unlawful Retaliation pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000(e) *et seq.* ("Title VII"); (2) Count II – Unlawful Discrimination in Violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"); and (3) Count III – Negligent and Intentional Infliction of Emotional Distress.  Doc. 9, ¶¶ 20-69.

Plaintiff's former counsel, Eric Frommer ("Frommer"), filed several Motions to Withdraw as Attorney (Docs. 24, 28, 35), which were denied by the Court without prejudice (Docs. 25, 32, 36).  Frommer's fourth Motion to Withdraw as Attorney (Doc. 54), was granted in part and denied in part (Doc. 57).  The Court determined, given Plaintiff's representation that the only address at which she can receive mail is P.O. Box 916284, Longwood, FL 32791, that any mail served on Plaintiff at this P.O. Box to be proper mail service.  *Id.* at 4.  Second, the Court noted that despite having had more than 112 days since its Order denying Frommer's Amended

---

[4] The parties dispute whether or not Plaintiff's employment was terminated by Defendant.  In the Amended Complaint, Plaintiff alleges that she was terminated, but also alleges that she was "compelled to resign her position."  Doc. 9, ¶¶ 15, 25.  Defendant maintains that when it eliminated Plaintiff's position due to lack of work, it offered Plaintiff two positions at her full rate of pay, and she repeatedly declined both offers, resulting in the end of her employment on June 2, 2008.  Doc. 64, pp. 5-6.

Motion to Withdraw, Plaintiff had not retained substitute counsel. *Id.*; *see* Doc. 32. Accordingly, the Court granted Frommer's request to be dismissed as Plaintiff's attorney and Plaintiff proceeds *pro se*.

## II.   STANDARD

Summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) (emphasis in original).  A fact is "material" if it may affect the outcome of the suit under governing law. *Id.* at 248.

The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004).  That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325.  In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003).

## III.   ANALYSIS

### A.  Plaintiff's Title VII and ADA claims are untimely

Defendant maintains that it is entitled to summary judgment on Plaintiff's Title VII and ADA claims, because Plaintiff cannot establish that she filed suit within ninety (90) days of her receipt of the Notice of Right to Sue from the Equal Employment Opportunity Commission ("EEOC") ("Right to Sue").   Doc. 64, p. 6.   In Response, Plaintiff appears to argue that Frommer, her former counsel, indicated he would file within the required ninety days.  Doc. 67, p. 1.

Indeed, as Defendant argues, in order for Plaintiff to maintain her Title VII and ADA claims against Defendant, she must demonstrate that she filed her complaint within ninety days of receipt of the Right to Sue.  *See* 42 U.S.C. § 2000e-5(f)(1); *Bryant v. U.S. Steel Corp.*,  428 Fed. Appx. 895, 897 (11th Cir. 2011) ("Dismissal is appropriate when the plaintiff fails to file her lawsuit within 90 days of receiving a right-to-sue letter, unless she shows that the delay was through no fault of her own."); *Green v. Union Foundry Co.*, 281 F.3d 1229, 1233-34 (11th Cir. 2002).

Here, the EEOC issued Plaintiff's Right to Sue on February 24, 2011.  *See* Doc. 64-Ex. 7, p. 25.  It is undisputed that Plaintiff filed this action on June 9, 2011, more than ninety days later. *See* Doc. 1.  In her deposition, Plaintiff indicated that she believed she received the Right to Sue on March 9, 2011, but that it may have been on March 15.  Plaintiff acknowledges that she does not recall when she received the Right to Sue, but that it was sometime in early March.  *See* Deposition of Jacqueline Curry, August 21, 2012, Doc. 64-Ex. 2 ("Curry Dep."), pp. 126 – 130. In her Response, Plaintiff provides no proof of receipt of the Right to Sue, but attaches a partially redacted email from Frommer, dated May 21, 2011, indicating he believed she had three weeks left to file.  *See* Doc. 67-Ex. 1.  Plaintiff also argues that if her claim was time barred, this problem "would have surfaced as soon as Mr. Frommer attempted to file, not nearly a year and a

half later." Doc. 67, p. 1, ¶ 1. Finally, Plaintiff reiterates that she does not recall the exact date in March 2011 that she received her Right to Sue. *Id.*

Upon consideration, the Court agrees that Plaintiff has not met her burden of satisfying the ninety day filing requirement. *See Green*, 281 F.3d at 1234; *Jackson v. Seaboard Coast Line R.R. Co.,* 678 F.2d 992, 1010 (11th Cir. 1982). Indeed, other courts have granted summary judgment, where, as here, the plaintiff did not recall their exact date of receipt of the right-to-sue and could not affirmatively demonstrate it was within the statutory period. *See Green*, 281 F.3d at 1234 ("because Green is unable to present evidence of the date of his wife's receipt of the letter, or to otherwise rebut the fact that ninety-seven days elapsed from the date of mailing to the date of filing, we conclude Green has failed to satisfy his burden."); *see also Martinez v. United States Sugar Corp.*, 880 F. Supp. 773 (M.D. Fla. 1995) (noting that the court had reason to grant judgment for defendant where plaintiff had not met his burden of proof regarding timeliness). Here, Plaintiff does not recall when she received the Right to Sue, except that it was in early March 2011. Further, Plaintiff has not provided sufficient evidence that she was unduly prejudiced by relying upon Frommer's miscalculation of the deadline. Plaintiff has failed to establish that any delay in filing her Title VII and ADA claims was through no fault of her own. Nevertheless, the Court will address the merits of this action and examine the sufficiency of Plaintiff's claims.

### B.  Plaintiff has not established a *prima facie* case of Title VII discrimination

In Count I, Plaintiff alleges that Defendant unlawfully retaliated against her in violation of Title VII of the Civil Rights Act. Doc. 9, ¶¶ 20-35. In its Motion for Summary Judgment, Defendant argues that Plaintiff failed to establish a *prima facie* case of retaliation, and

furthermore, cannot show that the legitimate reason for cessation of her employment was pretext for unlawful discrimination.  Doc. 64, pp. 8-12.

To prevail on a claim of Title VII race discrimination, a plaintiff must demonstrate either direct evidence of discrimination or present circumstantial evidence through the burden-shifting analysis set forth in *McDonnell-Douglas v. Green*, 411 U.S. 792 (1973).  Given Plaintiff has not provided any direct evidence of discrimination, she must establish her *prima facie* case by the preponderance of the evidence under the *McDonnell-Douglas* framework.  *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 142 (2000); *Sims v. MVM, Inc.*, 704 F.3d 1327, 1332 (11th Cir. 2013). To make a *prima facie* case for retaliation, Plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was treated differently than similarly situated persons outside of her protected class; and (4) she was qualified to do her job.  *Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006).  Defendant maintains that Plaintiff cannot establish either that she suffered an adverse employment action or that she was treated differently from those outside of her protected class. Doc. 64, pp. 9-11.

First, Plaintiff appears to allege that being left out of meetings starting in 2007, and the end of her employment with Defendant, which she characterizes as being forced to resign, are the adverse employment actions at issue.[5]  With respect to being left out of meetings, Plaintiff has provided no detailed factual allegations that support this claim.  Moreover, the Eleventh Circuit has held that adverse employment actions are limited to employer's conduct that negatively affects an employee's salary, title, position, or job duties.  *See Akins v. Fulton County*,

---

[5] In her Response, Plaintiff appears to construe the characterization in her Amended Complaint of having been constructively terminated as the error of her former counsel, Frommer.  *See* Doc. 67, p. 2.  In any event, it is clear that Plaintiff alleges the end of her employment with Defendant is the adverse employment event at issue.

420 F.3d 1293, 1301 (11th Cir. 2005).  Indeed, where a claimant does not allege that exclusion from meetings adversely affected the terms and conditions of her employment, such a condition was not considered an adverse action.  *Id.* at 1301-02.  Here, Plaintiff has neither provided factual information about being left out of meetings, nor alleged that this adversely affected the terms or conditions of her employment with Defendant.  Accordingly, this allegation does not constitute an adverse employment action.  *See id.* at 1302.

Second, with respect to the end of her employment with Defendant, Plaintiff's supervisor, Michael Quinn ("Quinn"), explained that the types of projects that Plaintiff's group had been asked to perform were declining in 2007, and each position in that group was gradually eliminated until the Software House Group was disbanded in 2011 and he was terminated. Declaration of Michael Quinn, Doc. 64-Ex. 5 ("Quinn Dec."), ¶ 8.  Quinn learned that Human Resources Site Manager Sara Velez ("Velez") identified two positions for which Plaintiff was qualified in the Spring of 2008.  *Id.* ¶ 12.  Quinn stated that he believed Plaintiff declined the work offered to her by Velez.  *Id.*  Similarly, Velez, Defendant's Human Resources Site Manager during the relevant times, affirmed that in the end of 2007, there was diminishing work available for employees within the Software House Group, and Defendant eliminated Plaintiff's position at the beginning of 2008 as a result of Quinn's determination that he had no work to assign her.  *See* Doc. 64-Ex. 6 ("Velez Dec."), ¶ 13. Velez explained that after Plaintiff repeatedly refused to accept either position within the deadline set by Defendant, her employment ended on June 2, 2008.  *Id.* ¶ 14.  Indeed, Plaintiff herself conceded at her deposition that after repeatedly notifying Defendant that she would not be making a selection between the two positions being offered to her in January 2008, she then offered to take one of them on a trial basis.  Curry Dep., pp. 164-67.  Plaintiff characterized the possibility of taking the

jobs offered, which she believes contained new responsibilities, as "setting [her] up to fail," and ultimately did not choose either. *Id.* at p. 171.

Alternatively, to the extent that Plaintiff asserts she was "constructively terminated,"[6] she has not provided any evidence that Defendant imposed working conditions that were "so intolerable that a reasonable person would have been compelled to resign." *Fitz v. Pusmire Lincoln Mercury, Inc.*, 348 F.3d 974, 977 (11th Cir. 2003) (finding that the five instances former employee listed as evidencing his poor working conditions would not, together, constitute constructive discharge).

After a defendant has pointed out the absence of material fact that could lead to a finding on one of plaintiff's claims, the burden shifts to the plaintiff to show that a genuine dispute of material fact remains to be resolved. *Celotex*, 477 U.S. at 322.  Here, Quinn and Velez's declarations, as well as Plaintiff's own testimony, indicate that she declined two positions in 2008 that would have allowed her to remain employed at the same wage rate.[7]  Velez Dec. ¶ 13, Quinn Dec. ¶ 12.  Here, no genuine issues of material fact exist with respect to Plaintiff's failure to establish an adverse employment action.  As a result, Plaintiff cannot establish a *prima facie* case of Title VII discrimination.  *See Burke-Fowler,* 447 F.3d at 1323.[8]  Consequently, Defendant is entitled to summary judgment on Plaintiff's Title VII claim in Count I.

### C.  Plaintiff has not established a *prima facie* case of ADA discrimination

---

[6] In her Amended Complaint, Plaintiff alleges that she was constructively terminated but also characterizes her departure as a resignation.  *See* Doc. 9, ¶¶ 1, 42.  In her Response, Plaintiff explains that any characterization of her departure as a constructive termination was the error of her former counsel, Frommer.  Doc. 67, ¶ 4.

[7] Indeed, Plaintiff's own testimony confirms that Defendant attempted to give her other positions which she believed were motivated by ill will and which she declined.  Curry Dep., pp. 165-68, 184-85.

[8] Given Plaintiff has failed to establish a *prima facie* case of retaliation, the Court need not continue to examine whether Defendant provided a legitimate, non-retaliatory reason for the cessation of Plaintiff's employment. *See McDonnell-Douglas*, 411 U.S. at 792.

In Count II, Plaintiff alleges Defendant discriminated against her in violation of the ADA.  Doc. 9, ¶¶ 36-48.[9]  Defendant argues that Plaintiff cannot establish a *prima facie* case of disability discrimination or a failure to accommodate claim.  Doc. 64, pp. 13-16.

The ADA prohibits covered employers from discriminating on the basis of known physical or mental impairments of a qualified individual with a disability.  42 U.S.C. § 12112.  The same burden shifting analysis of Title VII employment discrimination actions is applicable to ADA claims.  *See, e.g. Moses v. American Nonwovens, Inc.*, 97 F.3d 446, 447 (11th Cir. 1996).  Typically, to effectively state a cause of action under the ADA, a plaintiff must show that he: (1) is disabled as defined under the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job at issue; (3) was terminated or denied certain employment benefits, for which he was otherwise eligible, by a covered entity; and (4) such termination or denial of benefits was based upon his disability.  42 U.S.C. § 12112(a); *Harding v. Winn-Dixie Stores, Inc.*, 907 F. Supp. 386, 389 (M.D. Fla. 1995).

Here, Plaintiff is not disabled, but alleges that her husband is disabled.  Doc. 9, ¶ 4.  Indeed, the ADA defines "discriminate" to include "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association."  42 U.S.C. § 12112(b)(4).  In order to establish a *prima facie* case under the "association discrimination theory," a

---

[9] Although Plaintiff's Amended Complaint initially asserts that she states a claim under the Florida Civil Rights Act of 1992, Florida Statutes § 760.01 *et seq.* ("FCRA"), there is no count addressing this statute.  *See* Doc. 9.  However, the analysis of an FCRA claim is identical to the one used for the ADA.  *Albra v. Advan, Inc.*, 490 F.3d 826, 835 (11th Cir. 2007); *Byrd v. BT Foods, Inc.*, 948 So. 2d 921, 925 (Fla. 4th DCA 2007) ("As applied to discrimination based on a handicap, the FCRA is construed in conformity with the federal Americans with Disabilities Act (ADA)."); *Wimberly v. Security Technology Group, Inc.* 866 So. 2d 146, 147 (Fla. 4th DCA 2004) ("Because Florida Courts construe the FCRA in conformity with the ADA, a disability discrimination cause of action is analyzed under the ADA.")

plaintiff must show that (1) she suffered an adverse employment action; (2) she was qualified for the job at the time of the adverse employment action; (3) Defendant knew that a member of her family was disabled; and (4) the adverse employment action occurred under circumstances which raised a reasonable inference that the disability of the relative was a determining factor. *Hilburn v. Murata Elecs. North America*, *Inc.*, 181 F.3d 1220, 1231 (11th Cir. 1999); *Pittman v. Moseley, Warren, Prichard & Parrish,* 2002 WL 2007880, *3 (M.D. Fla. 2002). As discussed above, Plaintiff has not established that she suffered any adverse employment action, and accordingly, her claim of associational disability discrimination cannot proceed.

Additionally, although it is unclear in the Amended Complaint, it appears from her Response that Plaintiff is also asserting an ADA failure to accommodate claim. *See* Doc. 67, ¶¶ 2-3. Indeed, discrimination under the ADA includes "not making a reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee …" 42 U.S.C. § 12112(b)(5)(A). The Eleventh Circuit has clarified that an employee's request for accommodation must be direct, specific, and identify how it is linked to his disability. *United States v. Hialeah Housing Authority*, 418 Fed. Appx. 872, 876 (11th Cir. 2011).

In her Response, Plaintiff asserts that her requests to work from home in November 2005, 2006, and in February 2007, as an accommodation to care for her husband, were ignored. Doc. 67, ¶ 3. In contrast, she claims that "Ginny Seibert [was] allowed to work from home due to her husband's illness." *Id.* ¶ 6. However, as Defendant notes, an employer is not required, pursuant to the ADA, to provide an employee without a disability with a reasonable accommodation so that she can care for a disabled relative. *Pittman*, 2002 WL 2007880, *5; 29 C.F.R. § 1630.8. Indeed, as indicated in the applicable interpretative guidelines, a non-disabled employee "would

not be entitled to a modified work schedule as an accommodation to enable the employee to care for a spouse with a disability." *Id.*; 29 C.F.R. § 1630.8. Accordingly, Plaintiff has failed to state an ADA failure to accommodate claim. Moreover, as Defendant indicates, the evidence in the record suggests that Defendant did in fact permit Plaintiff to work from home from February 14, 2007 until the end of her employment on June 2, 2008. *See* Curry Dep., pp. 136-38; Velez Dec. ¶ 8.

Therefore, because Plaintiff has failed to bring forth evidence to establish that she suffered an adverse employment action, and because she is not entitled to a reasonable accommodation to care for her husband under the ADA, Defendant is entitled to summary judgment on Plaintiff's ADA Claim in Count II.

### D. Plaintiff has not established a Florida tort claim

In Count III, Plaintiff alleges that Defendant intentionally and deliberately inflicted mental and emotional distress on her, alleging the "negligent and intentional infliction of emotional distress." Doc. 9, ¶¶ 49-70.

First, Plaintiff's claim for negligent infliction of emotional distress is without merit. Florida law does not permit recovery for negligent infliction of emotional distress "unless the plaintiff manifests some physical injury as a result of the emotional trauma." *Gonzalez-Jimenez DeRuiz v. United States*, 231 F.Supp. 2d 1187, 1200 (M.D. Fla. 2002); *Holt v. Rowell*, 788 So. 2d 767, 769 (Fla. DCA 2001). In this case, Plaintiff has not alleged or established that Defendant caused her any physical injury. *See* Doc. 9. Thus, as a matter of law, her claim of negligent infliction of emotional distress cannot stand.

Second, under Florida law, the elements of a claim for intentional infliction of emotional distress are: (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard to the

probability of causing, emotional distress; (3) severe emotional distress suffered by the plaintiff; and (4) proof that the conduct caused the severe emotional distress. *Gonzalez-Jimenez*, 231 F. Supp. 2d at 1199; *R.W. v. Armor Correctional Health Services, Inc.*, 830 F.Supp. 2d 1295, 1304 (M.D. Fla. 2011); *Johnson v. Thigpen*, 788 So. 2d 410, 412 (Fla. 1st DCA 2001).   In Florida, conduct which reaches the level of outrageousness that would justify such a claim has rarely, if ever, been found solely on verbal harassment or abuse. *Thigpen*, 788 So. 2d at 413.   Indeed, federal courts in Florida have required repeated verbal abuse and repeated physical contact to meet the burden of outrageous conduct sufficient to state a claim of intentional infliction of emotional distress. *Id.* at 413-14; *Ward v. Casual Restaurant Concepts, Inc.*, 2011 WL 2600511, *4 (M.D. Fla. 2011).

Here, Plaintiff has not identified or established any extreme or outrageous conduct that caused emotional distress.   In the Amended Complaint, Plaintiff essentially argues that Defendant caused her emotional distress by discriminating against her based upon disability and creating a hostile work environment. *See* Doc. 9, ¶¶ 49-70. However, other than concluding that Defendant's retaliatory conduct was "outrageous," she cites no specific conduct that would suffice to meet this required element. *See, e.g. Sylvester v. GE Capital Retail Bank*, 2012 WL 3522691, *3 (M.D. Fla. 2012) ("Florida courts use a very high standard in evaluating whether the facts alleged are sufficiently outrageous, requiring that the conduct be 'beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"); *Frias v. Demings*, 823 F. Supp. 2d 1279, 1288 (M.D. Fla. 2011).   In her Response, Plaintiff states that Defendant received medical records indicating she was treated as a result of its "continued unlawful, deliberate and egregious behavior."   Doc. 67, ¶ 7.   Clearly, Plaintiff's imprecise allegations regarding Defendant's harassing conduct, if true, do not

constitute the outrageous conduct necessary to recover under this cause of action.  *See, e.g.* *Foreman v. City of Port St. Lucie,* 294 Fed. Appx. 554 (11th Cir. 2008) (under Florida law, an officer pointing an unloaded BB gun at an individual and pulling the trigger was not sufficiently outrageous); *Sylvester*, 2012 WL 3522691, *3; *Frias*, 823 F. Supp. 2d at 1288.  As a matter of law, the evidence before this Court is not sufficiently outrageous to constitute intentional infliction of emotional distress.

Therefore, Defendant is entitled to summary judgment on Plaintiff's claims of negligent and intentional infliction of emotional distress in Count III of the Amended Complaint.

Accordingly, it is hereby **ORDERED and ADJUDGED:**

1. Defendant HSBC Technology & Services, LLC's Motion for Summary Judgment (Doc. 64) is **GRANTED,** as it is entitled to judgment in its favor as a matter of law**.**

2. The Clerk is directed to enter judgment in favor of Defendant HSBC Technology & Services, LLC**.**

3. The Clerk is further directed to terminate all deadlines and close this case.

**DONE** and **ORDERED** in Orlando, Florida on May 15, 2013.

Charlene Edwards Honeywell
United States District Judge

**Copies furnished to:**
Counsel of Record
Unrepresented Parties